Antonio SCHMIDT, Appellant,

v.

The STATE of Texas.

No. PD–0402–06.

Court of Criminal Appeals of Texas.

May 9, 2007.

Rehearing Denied Aug. 22, 2007.

Eric Willard, Plainview, for Appellant.

Lisa McMinn, Asst. State Prosecuting Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the unanimous Court.

A jury convicted Appellant of retaliation and sentenced him to seven years' confinement and a $7,000 fine. The Court of Appeals reversed the trial court's judgment and rendered a judgment of acquittal. We granted the State's petition for discretionary review. We reverse the judgment of the court of appeals and remand the case to that court for further proceedings.

Appellant, Antonio Schmidt, was convicted by a jury of retaliation. The indictment alleged that he threatened to harm the victim by striking her in retaliation for or on account of her services as a prospective witness. Appellant and the victim had been seeing each other on and off for several years. On the morning of the alleged offense, Appellant was angry at the victim because she had given a statement to the police about something that had happened in Dallas. He yelled and cursed at the victim and screamed, "You stupid b——. I'm probably going to have to do time because of you!" The victim then

went outside to the front porch swing while Appellant continued to yell at her and scream her name from inside. Appellant went to the porch and grabbed her by the arms. She yelled at him to leave her alone, but he pushed her off the swing, causing her to hit her head on the porch. While she was lying on the ground, Appellant kicked her in the back and stomach, dragged her by her hair, and punched her in the face. The victim was then able to get inside the house. She tried to use the phone, but Appellant took it away from her and threw it across the room each time she tried. The victim finally locked herself in the bathroom until she could safely leave the house. As she left the house, Appellant laughed and said, "Ha, ha. That's what you get, b———."

Appellant appealed his conviction to the court of appeals asserting, in part, that the evidence was insufficient to prove that he had "threatened to harm" the victim. The term "threaten" is not statutorily defined. The court of appeals looked to the dictionary definition of "threaten," along with the statutory definition of "harm" to determine that a defendant threatens harm if he "gives signs or warnings or otherwise communicates an intent to inflict loss, disadvantage, or injury." Having thus defined "threaten," the court held that the evidence was insufficient because, viewed in the light most favorable to the verdict, it showed only that Appellant actually harmed the victim, not that he threatened to harm her as alleged in the indictment. In reaching this conclusion, the court held that "one cannot simultaneously be threatened with harm while the threatened harm is being inflicted," and that the threat must precede the actual harm. The court of appeals reversed the judgment of the trial court and rendered a judgment of acquittal.

We granted the State's petition for discretionary review which presents two issues: 1) Can a threat of harm and actual harm arise from the same act and occur simultaneously or must the threat precede the harm? 2) Was evidence that Appellant yelled at, cursed, grabbed, pushed, kicked, dragged, and punched the victim sufficient to prove that he threatened to harm her?

**Analysis**

**I.**

The State's first issue asks whether a threat of harm and actual harm can arise from the same act and occur simultaneously or whether the threat must precede the harm. The court of appeals took too narrow a view of the statutory meaning of "threaten" when it created a bright-line rule that "one cannot simultaneously be threatened with harm while the threatened harm is being inflicted" and that the threat must precede the actual harm. Whether a threat has been communicated is a fact-specific inquiry and such a bright-line rule and the court's application of the rule are too restrictive.

In *Olivas v. State*, 203 S.W.3d 341, 349 (Tex.Crim.App.2006), we explained that "there must be *some* evidence of a threat being made to sustain a conviction of assault by threat." For example, "an actor might threaten to stab by holding a knife overhead and telling the victim, 'I'll kill you,' or by his conduct of waiving the knife in the air or making some other threatening gesture." *Id.* at 349 n. 40. During a prolonged assault, the aggressor's actions can include both threats and actual harm. In some cases, infliction of harm itself can be a threat of further harm. In other cases, however, infliction of harm is simply infliction of harm without a threat.

In *McGowan v. State*, 664 S.W.2d 355 (Tex.Crim.App.1984), we analyzed the difference between a solitary blow without a

threat and a threat communicated after an initial blow. In *McGowan*, the defendant was originally convicted of aggravated assault of a mother and her fourteen-year-old daughter. The indictments for both victims alleged that the defendant had threatened the victim with imminent bodily injury by use of a deadly weapon, a knife. *Id.* at 357. On appeal, we held that the evidence was sufficient to show that the defendant threatened the daughter, but not the mother. *Id.* at 358. The evidence showed that the defendant pushed the daughter to the ground and began beating her, demanding that she clean his house. He then stabbed her in the stomach with a knife and started kicking her. She testified that she begged him not to stab her again. Not seeing the knife, the mother reached down to try to help her daughter. As she was bending down, the defendant stabbed the mother in the back of the head. *Id.* at 357. We held the evidence was insufficient to prove that the defendant threatened the mother with a knife because he stabbed her just once from behind. There was no evidence of a threat communicated before the stabbing, she did not see him holding the knife, and after he stabbed her, he fled. *Id.* at 357–58. This is contrasted with his stabbing and beating of the daughter, which was a prolonged assault. After he stabbed her once, the defendant continued standing over her with the knife. She begged him not to stab her again and testified that he threatened her with imminent bodily injury. *Id.*

The court of appeals' approach disregards the reality of an ongoing assault in which a threat of further harm could be communicated during the course of the assault. The State argues in its brief, and we agree, that the court of appeals' bright-line rule defines "threaten" too narrowly by assuming that a threat of harm and harm are mutually exclusive.

## II.

The State's second issue asks whether evidence that Appellant yelled at, cursed, grabbed, pushed, kicked, dragged, and punched the victim is sufficient to prove that he threatened to harm her. To uphold a conviction for threat, there must be some evidence of a threat being made. *Olivas,* 203 S.W.3d at 349. The evidence in this case, viewed in the light most favorable to the verdict, is legally sufficient to support the retaliation conviction.

We do not reach the issue, left open by our opinion in *Olivas,* 203 S.W.3d at 349, of whether or not a victim must perceive the threat, because in this case, there was ample evidence for the jury to find that Appellant threatened the victim. The victim testified that she was placed in fear through the beating she sustained. The threat made here is similar to the threat the *McGowan* defendant made against the daughter in *McGowan* by standing over her with the knife after having stabbed her once. In this case, Appellant threw the victim to the ground and continued beating her despite her requests that he stop. We do not need to decide whether the first attack included a threat, because in this ongoing assault, it was rational for the jury to find that Appellant communicated a threat of further violence.

Additionally, the victim testified that she felt threatened. The court of appeals discounted this testimony because she initially testified that she did not feel threatened "because it wasn't the first time it had happened." However, after the prosecutor rephrased the question, she answered that she did feel threatened. It is the sole province of the jury to weigh the credibility of the witnesses and testimony. The court of appeals failed to view the evidence in the light most favorable to the verdict when it discounted her testimo-

ny and found the evidence to be insufficient. Based on the totality of the evidence in this case, a reasonable jury could have found that Appellant threatened the victim as alleged in the indictment and jury charge.

### Conclusion

The court of appeals erred in drawing a bright-line rule that a threat of harm and actual harm cannot arise from the same act and occur simultaneously and that the threat must precede the initial harm. Viewed in the light most favorable to the verdict, the evidence was legally sufficient to support the retaliation conviction. We therefore reverse the judgment of the court of appeals and remand the case to that court for further proceedings on Appellant's remaining points of error.