IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0076-08





 

ANTONIO SCHMIDT, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SEVENTH COURT OF APPEALS


HALE COUNTY





 Hervey, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 A jury convicted appellant of retaliation by threat (a third-degree felony) and sentenced him
to seven years' confinement and a $7,000 fine. The indictment alleged that appellant threatened to
harm the victim "by an unlawful act, to-wit: striking" the victim in retaliation for or on account of
her services as a prospective witness. (1) The evidence shows that appellant struck the victim during
a prolonged attack in which he "yelled at, cursed, grabbed, pushed, kicked, dragged, and punched
the victim." See Schmidt v. State, 232 S.W.3d 66, 67 (Tex.Cr.App. 2007) (Schmidt I). The State
claimed at trial that appellant attacked the victim, at least in part, because the victim had given the
police a statement that appellant thought might result in him going to prison. See id. ("On the
morning of the alleged offense, Appellant was angry at the victim because she had given a statement
to the police about something that had happened in Dallas. He yelled and cursed at the victim and
screamed, "You stupid b . I'm probably going to have to do time because of you!"). The defense
claimed that appellant attacked the victim solely because of personal issues in their on-again, off-again, four-year interpersonal relationship unrelated to the victim's statement to the police.

 The court of appeals decided that the evidence was legally insufficient to support a finding
that appellant threatened to harm the victim because "one cannot simultaneously be threatened with
harm while the threatened harm is being inflicted." See id. The State claimed on discretionary
review in this Court that "[t]he fact that Appellant harmed the victim by striking her, does not mean
that by the act of striking her, he did not also threaten to harm her." (2) The State prevailed on this
claim, and the case was remanded to the court of appeals for further proceedings. See Schmidt I, 232
S.W.3d at 68-69 (evidence that appellant, among other things, struck the victim during the prolonged
attack was legally sufficient to prove that he threatened to harm her).

 On remand, the court of appeals decided that the trial court reversibly erred in denying
appellant's requests for jury instructions on the lesser offenses of assault causing bodily injury (a
Class A misdemeanor) (3) and assault by threatening to cause imminent bodily injury (a Class C
misdemeanor). (4) See Schmidt v. State, No. 07-04-0480-CR, slip. op. at 7-10 (Tex.App.-Amarillo,
delivered November 20, 2007) (unpublished) (Schmidt II). The court of appeals decided that these
were lesser-included offenses of the charged retaliation-by-threat offense under this Court's decision
in Hall v. State, which held that the determination of whether an offense is a lesser-included offense
under Article 37.09(1), Tex. Code Crim. Proc., is made by "comparing the elements of the greater
offense, as the State pled it in the indictment, with the elements in the statute that defines the lesser
offense," and then determining whether the elements of the lesser offense are "established by proof
of the same or less than all the facts required to establish the commission of the offense charged." 
See Hall v. State, 225 S.W.3d 524, 525, 536 (Tex.Cr.App. 2007). (5)

 Applying Hall, the court of appeals decided that, in establishing the elements of the
retaliation-by-threat offense as pled in the indictment (i.e., that appellant threatened to harm the
victim "by an unlawful act, to-wit: striking" the victim), the State was required to prove these lesser
offenses, specifically that appellant's act of striking the victim was "the legal equivalent of causing
bodily injury" and "a threat to cause imminent bodily injury." See Schmidt II, slip op. at 7-10. (6) After
setting out the statutory elements of the retaliation-by-threat offense, as the State pled it in the
indictment, and the statutory elements of assault causing bodily injury and assault by threatening to
cause imminent bodily injury, the court of appeals' opinion states:

 Appellant maintains that these [lesser] offenses are lesser included offenses because
they are established by proof of less than all the facts required to establish the offense
of retaliation, to-wit: they do not require proof that the assault was in retaliation for
or on account of the services of [the victim] as a prospective witness.


 Therefore, whether assault causing bodily injury is a lesser included offense of
retaliation, as charged, turns on whether proof of threaten to harm or striking is
legally equivalent to proof of bodily injury. (Emphasis added). Likewise, whether
assault by threatening to cause imminent bodily injury is a lesser included offense of
retaliation, as charged, turns on whether proof of threaten to harm or striking is
legally equivalent to proof of threaten to cause imminent bodily injury. (Emphasis
added).


 Under [dictionary definitions of "strike," "bodily injury," "harm," and "imminent"],
to strike someone would be the legal equivalent of causing bodily injury to that
person and a threat to cause imminent bodily injury would necessarily constitute a
threat to harm someone. Furthermore, during a prolonged assault, the aggressor's
actions can include both threats and actual harm. Schmidt [I], 232 S.W.3d at 67. 
Therefore, because the difference between the [retaliation] offense as charged and the
lesser offenses requested by Appellant is established by proof of less than all the facts
required to establish the commission of the offense charged, the offenses of assault
causing bodily injury and assault by threatening to cause imminent bodily injury are
lesser included offenses of the felony offense of retaliation, as charged in this case.


See Schmidt II, slip op. at 9-10 (emphasis in original).


 We granted the State's petition for discretionary review of this decision. The grounds upon
which we granted review of this decision state:

 1) Is assault by causing bodily injury a lesser included offense of retaliation when the
indictment alleges that the defendant threatened to harm another by an unlawful act,
to wit: striking?


 2) Is assault by threatening imminent bodily injury a lesser included offense of
retaliation when the indictment alleges that the defendant threatened to harm another
by an unlawful act, to wit: striking?


 3) In determining whether a lesser offense is included within the indictment, are all
the allegations considered-even surplusage and strictly evidentiary facts-or only the
elements and statutory manner and means of the offense?


 4) Is a lesser included offense raised with respect to an element regarding the
defendant's motive for committing an unlawful act when there is no evidence that
negates the motive alleged, but there is evidence of an additional motive to commit
the unlawful act?

 

 The State argues in its brief that it was not required to prove that appellant struck the victim
in order to establish the retaliation-by-threat offense as pled in the indictment because the indictment
alleged that appellant "threatened to strike, not that he did strike." In its brief, the State argues:

 The Court of Appeals' first mistake relates to its holding that assault by causing
bodily injury was included within the allegations in the indictment. The Court of
Appeals misconstrued the elements of retaliation as alleged in the indictment by
viewing them in light of the evidence at trial. The indictment alleged that Appellant
threatened to harm another, to wit: [the victim] by an unlawful act, to wit: striking. 
Striking was the unlawful act that Appellant threatened to carry out, and the means
by which Appellant communicated his threat are not stated in the indictment. In
other words, the indictment alleged that Appellant threatened to strike, not that
he did strike. The Court of Appeals however, interpreted the indictment to mean
that Appellant either threatened to harm [the victim] or struck [the victim].


 Although the proof shows that he both threatened and struck, Hall requires the
reviewing court to examine the allegations in the indictment, not the proof at trial. 
The Court of Appeals cited [Schmidt I] for the proposition that during a prolonged
assault, the aggressor's actions can include both threats and harm. [Citation omitted]. 
But [Schmidt I's] recognition that the State could use evidence of striking as proof
of the threat dealt with sufficiency of the evidence. It was not a holding that the
indictment allegations required actual striking in order to prove the threat was made. 
Therefore, even if assault by bodily injury was shown by the facts at trial, proof of
striking was not a fact necessary to prove the allegation of a threat to harm by
unlawful act: to wit: striking.


 An allegation that Appellant threatened to strike the victim could have been proved
by his making a fist and cocking his arm back as if to hit her, or it could have been
made by Appellant saying, "I'm going to hit you." Therefore, striking is not
necessarily included within an allegation of only a threat to strike. (Citation and
parenthetical omitted). Because the indictment in this case did not require proof of
striking or any kind of injury, the offense of assault by causing bodily injury was not
a lesser included offense in this case. (7)


(Emphasis in italics in original and emphasis in bold added). (8)


 The State, however, claimed in Schmidt I that "[t]he fact that Appellant harmed the victim
by striking her, does not mean that by the act of striking her, he did not also threaten to harm her." 
This necessarily included the claim that appellant's act of actually striking the victim was included
within the allegations in the indictment (we will not presume that the State would claim in Schmidt
I that appellant's conviction could have been upheld on a factual theory not set out in the indictment
and the jury charge). See Wooley v. State, slip op. at 13-14 (Tex.Cr.App. No. PD-0861-07, delivered
June 25, 2008) (due process prevents appellate court from affirming a conviction based upon legal
and factual grounds that were not submitted to the jury). With the State having prevailed on this
claim in Schmidt I, we believe that the State is judicially estopped from now claiming that the
indictment alleged that appellant "threatened to strike, not that he did strike." See Maine v. New
Hampshire, 532 U.S. 742, 749-51 (2001) (equitable rule of judicial estoppel generally prevents a
party from prevailing in one phase of a case on an argument and then relying on a contradictory
argument to prevail in another phase). (9)

 And we are not persuaded by the State's argument that the allegation in the indictment that
appellant threatened to harm the victim "by an unlawful act, to-wit: striking" the victim should be
construed to allege only that "appellant threatened to strike, not that he did strike." We believe that
such an indictment can be construed to allege that appellant threatened to harm the victim either by
threatening to strike her or by actually striking her (as confirmed by the State's opening statements
at trial). (10) Construing the indictment in this case to include an allegation of actual striking finds
further support in our decision in Schmidt I in which we accepted the State's argument that a threat
of harm can arise from actual striking. See Schmidt I, 232 S.W.3d at 68 ("The State argues in its
brief, and we agree, that the court of appeals' bright-line rule defines "threaten" too narrowly by
assuming that a threat of harm and harm are mutually exclusive."). (11)

 Having decided that the indictment in this case can be construed to allege that appellant
actually struck the victim and that the State is judicially estopped from claiming otherwise, we agree
with the court of appeals that the lesser offenses of assault causing bodily injury and assault by
threatening to cause imminent bodily injury were established by proof of less than all the "facts
required" to establish the commission of the charged retaliation-by-threat offense as the State pled
it in the indictment. See Hall, 225 S.W.3d at 525, 536. In establishing the commission of the
charged retaliation-by-threat offense, the indictment required the State to prove that appellant struck
the victim which, for purposes of this case, (12) also establishes assault causing bodily injury and,
pursuant to our decision in Schmidt I that actual striking can also constitute evidence of a threat to
strike, assault by threatening to cause imminent bodily injury. These offenses, therefore, meet the
lesser-included-offense definition of Article 37.09(1) in this case. Grounds one and two are
overruled.

 The State claims in ground three that, even if the indictment can be construed to include an
allegation that appellant struck the victim, the "to-wit: striking" allegation should not be considered
in a lesser-included-offense analysis under Hall, because "striking" was not a "fact required" to
establish the charged retaliation-by-threat offense. In support of this claim, the State argues that the
"to-wit: striking" allegation was not required to be pled and is unnecessary surplusage that is "merely
descriptive of an element but not statutorily required." The State also argues that appellant could
have been convicted of the same retaliation-by-threat offense under an indictment omitting the "to-wit: striking" allegation and merely alleging, for example, "that appellant threatened to harm the
victim by an unlawful act in retaliation for the victim's services as a prospective witness."

 Our decision in Hall does not support the State's position. The murder indictment in Hall
alleged that the defendant caused an individual's death by "shooting the individual with a gun." See
Hall, 225 S.W.3d at 536. The State's argument in this case that the non-statutory, manner and means
allegation of "striking" should not be considered a "fact required" to establish the charged
retaliation-by-threat offense is contrary to our decision in Hall because Hall considered the non-statutory, manner and means allegation of "shooting the individual with a gun" to be a "fact
required" to establish the charged murder offense. (13) See id. In arguing that the non-statutory
allegation of "striking" should not be considered in a lesser-included-offense analysis under Hall,
the State is essentially arguing that this Court should apply the "strict-statutory" or "cognate"
approach, (14) which Hall expressly rejected in favor of the "cognate-pleadings" approach. (15) See Hall,
525-26, 535 (holding that the "pleadings approach is the sole test for determining in the first step
whether a party may be entitled to a lesser-included-offense instruction"). 

 In addition, that appellant could have been convicted of this retaliation-by-threat offense
under an indictment omitting the "to-wit: striking" allegation does not necessarily make this
allegation unnecessary surplusage. We note that this Court's decision in Doyle v. State would
support a holding that a defendant's timely motion to quash such an indictment would require the
State to provide the "to-wit: striking" allegation for purposes of providing adequate notice. See
Doyle v. State, 661 S.W.2d 726, 729-31 (Tex.Cr.App. 1983) (defendant's timely motion to quash
a "nonfundamentally defective" retaliation-by-threat indictment entitled the defendant to notice of
"how and to whom the threat was made") (emphasis supplied). (16) We, therefore, do not believe that
the "to-wit: striking" allegation in appellant's indictment could be considered unnecessary surplusage 
since, under Doyle, a defendant, upon timely request, is entitled to such an allegation in the
indictment. See id.

 A decision that the "to-wit: striking" allegation is a "fact required" to establish the charged
retaliation-by-threat offense under Hall is also consistent with Hall's requirement that the step-one,
lesser-included-offense analysis "may be, and to provide notice to the defendant must be, capable
of being performed before trial by comparing the elements of the offense as they are alleged in the
indictment or information with the elements of the potential lesser-included offense." See Hall, 225
S.W.3d at 535-36. Without the "to-wit: striking" allegation in the indictment, the step-one, lesser-included-offense analysis under Hall would not be "capable of being performed before trial" because
it would not be possible to determine before trial the "facts required" to establish the unlawful act
element of such a charged retaliation-by-threat offense. (17) Finally, we believe that whatever is left
of our "surplusage" jurisprudence speaks more to sufficiency-of-the-evidence issues (18) than it does
to determining the "facts required" to establish the statutory elements of the charged offense "as they
were modified by the particular allegations in the indictment." See Hall, 225 S.W.3d at 536.

 The indictment in this case alleged that appellant threatened to harm the victim by an
unlawful act, "to-wit: striking." The "to-wit: striking" allegation was how the State pled the
"unlawful act" element of the offense and "striking" was, therefore, a "fact required" to establish the
commission of this element of the retaliation offense. See Hall, 225 S.W.3d at 525 (method of
determining whether the allegation of a greater offense includes a lesser offense "should be made
by comparing the elements of the greater offense, as the State pled it in the indictment, with the
elements in the statute that defines the lesser offense"). Ground three is overruled.

 The State claims in ground four that appellant was not entitled to either of the lesser-included-offense instructions under the second step of the analysis for determining whether a lesser-included-offense instruction should be submitted, because there is not even a scintilla of evidence
to show that if appellant is guilty, he is guilty of only either one of these lesser-included offenses. 
See Hall, 225 S.W.3d at 536; Rousseau v. State, 855 S.W.2d 666, 673 (Tex.Cr.App. 1993). (19) The
State argues that the court of appeals decided that appellant was entitled to these lesser-included-offense instructions simply because the jury could have disbelieved evidence establishing appellant's
retaliatory motive in the absence of other affirmative evidence rebutting this retaliatory motive. 
Citing to this Court's case law which the State suggests might support such a decision, (20) the State
claims that the court of appeals' decision is inconsistent with other case law from this Court holding
that "there must be affirmative evidence to rebut the greater element, and the jury may not simply
disbelieve evidence establishing the greater." See, e.g., Hampton v. State, 109 S.W.3d 437, 439
(Tex.Cr.App. 2003). The State further claims that we should reaffirm cases such as Hampton and
overrule cases such as Schweinle and Saunders. (21)

 We do not read the court of appeals' opinion to decide that appellant was entitled to the
lesser-included-offense instructions simply because the jury could have disbelieved evidence
establishing appellant's retaliatory motive. We read its opinion as basing its decision on what it
claimed was affirmative evidence that rebutted appellant's lack of a retaliatory motive. Its opinion
states:

 The defense strategy was, in part, an effort to show that Appellant and the victim had
argued over several different subjects, including a relationship between Appellant
and another young lady. In this regard, Appellant essentially contends that there was
more than a scintilla of evidence that the altercation between Appellant and the
victim was due to their dysfunctional personal relationship rather than in retaliation
for her service as a prospective witness against Appellant.


 During direct examination, the victim testified as follows:


 Q. [sic] We argued a little bit about that girl, but I-he said that he
wanted to talk to her because she kept calling. And I told him, I said,
"You know what? You want to talk to her? I don't care. Because
once I leave here today, I'm never talking to you again.["]


 Later, during cross-examination, she explained that she had obtained the girl's phone
number and called her to tell her that she and Appellant had been romantically
involved for almost four years. She added that the girl did not believe her. The
victim also testified that she and Appellant argued over Brittany telling Appellant
details about the victim's private life.


 Based on all the evidence presented, we conclude there was more than a scintilla
of evidence that would have permitted the jury to rationally find that the assault
was for reasons other than in retaliation for or on account of her services as a
prospective witness. The second prong was met; therefore, the trial court erred in
refusing to instruct the jury on the lesser included offenses of assault with bodily
injury and assault by threatening to cause imminent bodily injury.

 

See Schmidt II, slip op. at 10-11. (Emphasis supplied). (22)


 We note that the evidence also shows that the victim and appellant had broken up, got back
together and argued many times in the past. At the time of the assault, the victim and appellant were
trying to get back together after the victim had left appellant over him seeing the other girl. The
evidence also shows that they argued about several things on the morning of the assault including
issues about their interpersonal relationship and the victim's statement to the police. We also believe
that the record reflects that the evidence was conflicting on whether appellant referred to the victim's
statement to the police while he was assaulting her and whether his reason for assaulting her was in
any way related to her statement to the police. For example:

 Q. [STATE]: Was he saying anything to you while he was kicking you?


 A. [VICTIM]: Just calling me a bitch and a ho.


 Q. Did he ever mention anything else about him having to go to jail or do time
because of you?


 A. No.

* * *

 Q. [DEFENSE]: Okay. Kimberly, what I asked you was: He was yelling at you from
the back. He wasn't yelling at you about-he wasn't yelling at you about the
statement or anything that you told the police, was he?


 A. No.


 Q. You don't know what he was thinking while he was back there, do you?


 A. No.


 Q. And then when he came outside to get you, he still wasn't yelling at you about
what happened between-what you may or may not have told the police, was he?


 A. No.


 Q. So at that time what could have been on his mind could have been the personal
things that you told Bridgett or Brittany, correct?


 A. Yes.


 Q. Could have been the issues that we've talked about regarding this other girl,
correct?


 A. Yes.

* * *

 Q. And while you-all were having this argument or altercation out on the porch,
[appellant] didn't really say much, did he? Called you some names, but he didn't say
much else, did he?


 A. No.


 Q. So he didn't say anything out there that would tell you what was going on his [sic]
mind--


 A. He--


 Q. -why that was going on?


 A. He told me while he was pushing me and hitting me and stuff, that-he said-he
didn't say the exact words, but he said, "You stupid bitch, I'm going to have to do
time because of you."


 Q. Well, as I understood your testimony earlier, you said that he told you that while
you-all were arguing verbally--


 A. He said that to me several times.


 Q. Let me finish my question, please. My understanding of your testimony-and I
may be wrong, but my recollection was that you said it was in the living room when
you-all were verbally arguing; is that correct?


 A. Yes.


 Q. And my question to you then is: he didn't say much to you out on the porch, did
he?


 A. No.


 Q. And out on the porch when you-all were having that altercation, he did not say
anything that would indicate to you what was going on in his mind, did he?


 A. Yes, he did.


 Q. That's different from your testimony earlier when [the State] was asking you
questions, isn't it?


 A. I'm not for sure.


 Q. In response to [the State's] questions about what happened out on the porch, did
you tell him that [appellant] just called you names?


 A. Yes, he called me names.


 Q. But you didn't tell him that he said anything else, did you?


 A. Well, he had said that to me. He said that to me a few times during the day.


 We decide that this record contains more than a scintilla of affirmative evidence that rebuts
"the retaliatory purpose alleged in the indictment" and establishes the lesser-included offenses of
assault with bodily injury and assault by threatening to cause imminent bodily injury as "valid,
rational alternative[s] to the charged offense." See Hall, 225 S.W.3d at 536. We, therefore, find it
unnecessary to address the State's claim that we should overrule this Court's decisions in Schweinle
and Saunders.

 The judgment of the court of appeals is affirmed.


 Hervey, J.


Delivered: March 11, 2009

Publish
1. See § 36.06(a)(1)(A), Tex. Pen. Code (person commits offense of retaliation if he harms or
threatens to harm another by an unlawful act in retaliation for the other's service as a prospective
witness). 
2. The State's argument on discretionary review was also consistent with its opening statements
at trial:


 [STATE]: We believe the evidence will show you that [appellant] was very upset
with [the victim] because she had acted as a witness or a prospective witness by
giving these statements against him for something else, and that he did threaten
her by striking her.

* * *

 And so I want you to listen very closely to testimony in this case. And whether you
find an assault occurred or not, we will ask you to find that the actions that he
took by striking [the victim] were threatening to her and that those threats were
made in retaliation for her acting as a prospective witness.


(Emphasis supplied). 
3. See § 22.01(a)(1), Tex. Pen. Code (person commits offense of assault if the person, among
other things, causes bodily injury to another person).
4. See § 22.01(a)(2), Tex. Pen. Code (person commits offense of assault if the person, among
other things, threatens another with imminent bodily injury).
5. Article 37.09(1) provides that an offense is a lesser-included offense if "it is established by
proof of the same or less than all the facts required to establish the commission of the offense
charged."
6. We do not understand the State to challenge, and we did not exercise our discretionary
authority to review, the court of appeals' decision that appellant's act of striking the victim was "the
legal equivalent of causing bodily injury" and "a threat to cause imminent bodily injury." For
purposes of this case, we will assume that appellant's act of striking the victim was "the legal
equivalent of causing bodily injury" and "a threat to cause imminent bodily injury." See also
Marrow v. State, 39 S.W. 944 (Tex.Cr.App. 1897) (defendant assaulted prosecutor by kicking him);
Wawrykow v. State, 866 S.W.2d 96, 99-100 (Tex.App.-Beaumont 1993, pet. ref'd) (evidence
sufficient to support defendant's assault of police officer by hitting officer with his fists even though
there was no direct evidence showing that defendant's blows caused officer physical pain or
impairment) and at 101 (Burgess, J., concurring) (reasonable to infer that blows to head with closed
fist will cause some amount of physical pain as opposed to a "push" to the chest).
7. We note that the State did not claim in its discretionary-review petition, as it appears to have
in its brief on direct appeal, that the indictment in this case did not require proof of "any kind of
injury." See Footnote 6.
8. With respect to the lesser offense of assault by threatening imminent bodily injury, the State
argues that the evidence adduced at trial could have established the charged retaliation-by-threat
offense without also establishing a threat of imminent bodily injury. The State argues:


 Appellant could have been convicted of retaliation under the instant indictment if the
facts showed he told the victim that if he had to go to prison because of her, he would
beat her up when he got out. But these facts would not have been sufficient to prove
a threat of imminent bodily injury.


(Emphasis in original).
9. We further note that had the State not prevailed on this claim in Schmidt I, then it is almost
certain that we could not have upheld appellant's conviction on the factual theory presented to the
jury (i.e., the theory that appellant threatened to harm the victim by actually striking her) and that
appellant would have been entitled to a reversal of his conviction. See Wooley, slip op. at 13-14; see
also Maine v. New Hampshire, 532 U.S. at 751 (a consideration in whether to apply equitable rule
of judicial estoppel "is whether the party seeking to assert an inconsistent position would derive an
unfair advantage or impose an unfair detriment on the opposing party if not estopped") and at 755
("In short, considerations of equity persuade us that application of judicial estoppel is appropriate
in this case. Having convinced this Court to accept one interpretation of 'Middle of the River' [in
a boundary dispute between New Hampshire and Maine], and having benefitted from that
interpretation, New Hampshire now urges an inconsistent interpretation to gain an additional
advantage at Maine's expense. Were we to accept New Hampshire's latest view, the 'risk of
inconsistent court determinations,' [citation omitted], would become a reality. We cannot interpret
'Middle of the River' in the 1740 decree to mean two different things along the same boundary line
without undermining the integrity of the judicial process.").
10. We believe that a drafter of an indictment, wanting to draft an indictment alleging only that
a defendant "threatened to strike, not that he did strike," could do so with an allegation that the
defendant threatened to harm the victim "by an unlawful act, to-wit: threatening to strike" the victim.
11. Another retaliation-by-threat case recently decided by this Court helps to illustrate this. See
Pollard v. State, S.W.3d (Tex.Cr.App. No. PD-0363-08, delivered February 11, 2009). Like
this case, Pollard is a retaliation-by-threat case in which the indictment alleged that Pollard
threatened to harm the victim "by an unlawful act, to-wit: committing an assault upon [the victim]
causing bodily injury." Unlike this case, however, the evidence in Pollard showed only a threat to
commit an assault, not an actual assault. See Pollard, slip op. at 2. We believe that this case and
Pollard demonstrate how the indictments in these cases can be construed to allege a threat of harm
(e.g., a threat to strike) or actual harm (e.g., actual striking).
12. See Footnote 6.
13. The non-statutory, manner and means allegation in this case of "striking" parallels the non-statutory, manner and means allegation in Hall of "shooting the individual with a gun."
14. See Hall, 225 S.W.3d at 525-26 ("strict-statutory" or "cognate" approach permits a lesser-included-offense instruction "only when all of the statutory elements of the lesser offense are
contained within the statutory elements of the greater offense").
15. See Hall, 225 S.W.3d at 526 ("cognate-pleadings" approach "looks to the facts and elements
as alleged in the charging instrument, and not just to the statutory elements of the offense")
(emphasis supplied).
16. The State claims that Doyle is distinguishable from, and does not apply to, this case because
appellant did not file a motion to quash the indictment. We do not see what appellant could have
accomplished by filing a motion to quash this indictment. We agree that Doyle does not apply to this
case, but not because appellant did not file a motion to quash the indictment. Doyle does not apply
to this case because appellant's indictment alleged what the indictment in Doyle did not allege, i.e.,
how appellant's threat was made (i.e., "to-wit: striking"). 
17. The State also does not suggest how such a retaliation-by-threat indictment would provide
a defendant with notice before trial of the "facts required" to establish the unlawful act element of
the offense. See Hall, 225 S.W.3d at 537 (suggesting that it "might run afoul of the requirements
of due process by making it impossible to know before trial what lesser offenses are included within
the indictment").
18. See Gollihar v. State, 46 S.W.3d 243, 256-57 (Tex.Cr.App. 2003) (expressly overruling
"surplusage law" and an exception to this law "to bring our state courts' sufficiency of the evidence
review" in line with federal constitutional requirements); see generally Fuller v. State, 73 S.W.3d
250 (Tex.Cr.App. 2002); Curry v. State, 30 S.W.3d 394 (Tex.Cr.App. 2000); Malik v. State, 953
S.W.2d 234 (Tex.Cr.App. 1997).
19. Relying on Rousseau, this Court in Hall, 225 S.W.3d at 536, reaffirmed that the "evidence
adduced at trial" is an important part of the second step of the analysis of whether a jury should be
charged on lesser-included offenses:


 The evidence adduced at trial should remain an important part of the court's decision
whether to charge the jury on lesser-included offenses. The second step in the
analysis should ask whether there is evidence that supports giving the instruction to
the jury. "A defendant is entitled to an instruction on a lesser-included offense where
the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury
rationally to find that if the defendant is guilty, he is guilty only of the lesser-included
offense." [Footnote omitted]. In this step of the analysis, anything more than a
scintilla of evidence may be sufficient to entitle a defendant to a lesser charge.
[Footnote omitted]. In other words, the evidence must establish the lesser-included
offense as "a valid, rational alternative to the charged offense." [Footnote omitted].
20. See Schweinle v. State, 915 S.W.2d 17 (Tex.Cr.App. 1996); Saunders v. State, 840 S.W.2d
390 (Tex.Cr.App. 1992).
21. The State further explains that its "stance . . . in this case" does not conflict with its argument
in a recently decided case of Wasylina v. State, S.W.3d (Tex.Cr.App. No. PD-0519-07,
delivered January 28, 2009) even though its stance in this case "might be seen as conflicting" with
its argument in Wasylina. We find it unnecessary to decide whether the State is taking inconsistent
positions on another issue in this case.
22. The State's brief does not address why this and other evidence presented at trial does not
affirmatively raise the lesser-included offenses except to argue that "the evidence that Appellant and
the victim argued over an additional topic did not rebut or negate the greater element of the offense"
and "only offered another reason for Appellant's actions in addition to the retaliatory purpose alleged
in the indictment." (Emphasis in original). This argument, however, does not address the court of
appeals' decision that the lesser-included offenses were raised by "more than a scintilla of evidence
that would have permitted the jury to rationally find that the assault was for reasons other than in
retaliation for or on account of her services as a prospective witness." See Degrate v. State, 712
S.W.2d 755, 756 (Tex.Cr.App. 1986) (discretionary review petition should specifically address court
of appeals' decision). The court of appeals did not decide that the lesser-included offenses were
raised by evidence that appellant assaulted the victim over appellant's actions in addition "to the
retaliatory purpose alleged in the indictment."