*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



## MEMORANDUM OPINION

No. 04-09-00510-CR

Arturo **ROSAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-10852
Honorable Pat Priest, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed: December 1, 2010

AFFIRMED

A jury convicted appellant Arturo Rosas of three counts of aggravated sexual assault and one count of aggravated assault with a deadly weapon. The trial court sentenced Rosas to fifty years imprisonment in the Texas Department of Criminal Justice-Institutional Division for each aggravated sexual assault count and fifteen years for the aggravated assault count. The sentences were ordered to run concurrently. On appeal, Rosas's sole point of error is that the evidence is

factually insufficient to support his three convictions for aggravated sexual assault. We affirm the trial court's judgment.

## BACKGROUND

Fernando Munoz, a San Antonio Code Compliance Officer, was driving down the street when the complainant flagged him down. The complainant was yelling, "help me" and "I'm being raped." At first, Munoz thought she was wearing a sundress, but as the complainant ran closer, he realized that she was naked. Munoz immediately called his supervisor who then called the police.

San Antonio Police Officer Steve Christian was the first to arrive. He testified the complainant kept saying, "He's raping me" and "He's trying to kill me." The complainant then showed Officer Christian the house where she had been assaulted, and when Officer Christian went to the house, Rosas's aunt let him into the garage apartment. Rosas was in the apartment and Officer Christian arrested him.

The complainant was taken to the hospital for a sexual assault examination. She was examined by sexual assault nurses Casey Ward and Shelly Botello. Ward testified the complainant had scratches on both sides of her face, left thigh, chest, and lower back. Photographs taken during the examination were admitted into evidence. Botello testified that the complainant told her that her anus was penetrated by both Rosas's fingers and penis, her mouth was penetrated by Rosas's penis, and her vagina was penetrated by both Rosas's fingers and penis. Botello found no trauma during the genital exam, but stated this was normal in the "adult, sexually active population." Although Botello noted there was no trauma to the genitals, she did find a linear tear to the complainant's anus and said the anus was "red and raw."

At trial, the complainant testified she was waiting for the bus when Rosas pulled up and asked her if she needed a ride home. At first, the complainant refused to accept the ride, but she eventually agreed. Instead of driving her home, Rosas drove to his aunt's house. According to the complainant, she and Rosas went into the garage apartment attached to the house. As the complainant was sitting on his bed, Rosas "smacked" her bottle of ice tea from her hands, jumped on top of her, and grabbed her neck with both hands. The complainant said she was in pain, could not breathe, and felt like she was going to pass out. Rosas told the complainant not to struggle because he was stronger than she was. Just before she passed out, Rosas told the complainant to take her clothes off because he wanted oral and anal sex. The complainant stated she tried to leave the room twice, but the second time, Rosas threw her on the ground and started choking her again. He told her, "The way I'm squeezing you I can kill you." The complainant testified she feared for her life and did not believe she would leave the bedroom alive.

After the threat, the complainant unwillingly performed oral sex on Rosas but he then demanded anal sex again. When she refused, Rosas asked, "Are you going to make me hurt you again?" The complainant then unwillingly submitted to anal sex. When the complainant asked Rosas to stop because it hurt and she needed to use the bathroom, Rosas led her to the bathroom and made the complainant wash his penis. After they returned to the bedroom, the complainant unwillingly submitted to both vaginal and anal sex. At times, Rosas would become flaccid and force the complainant to perform oral sex.

At one point, the complainant heard someone sweeping a broom outside the apartment. While on top of Rosas, she feigned enjoyment then jumped off Rosas and ran for the door. Rosas attacked her before she could unlock and open the door but the complainant was able to bang on the door. Rosas wrapped his legs around the complainant and started choking her again.

Celestina Rosas, Rosas's mother, heard the bang and opened the door with a key. The complainant testified Celestina said in Spanish that she "knows that he had done it before." Once Celestina was inside the apartment, Rosas started choking the complainant against the wall. Celestina tried to restrain Rosas and when he turned his attention to her, the complainant escaped out the door and ran into the street naked.

## DISCUSSION

In his sole point of error, Rosas contends the evidence is factually insufficient to support his convictions for aggravated sexual assault. More specifically, Rosas argues that no rational trier of fact could have found him guilty beyond a reasonable doubt of aggravated sexual assault based on the evidence presented. He does not complain on appeal of his conviction for aggravated assault.

In light of the Texas Court of Criminal Appeals's recent decision in *Brooks v. State*, the standard we use to review a factual sufficiency claim is the now same as the legal sufficiency standard. No. PD-0210-09, 2010 WL 3894613, at *14 (Tex. Crim. App. Oct. 6, 2010). In *Brooks*, the court held "that the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* The court explicitly overruled the standard for a factual sufficiency review as set forth in *Clewis v. State*. *Id.* Before *Brooks*, in reviewing the factual sufficiency of the evidence, we reviewed the evidence in a neutral light. *Steadman v. State*, 280 S.W.3d 242, 247 (Tex. Crim. App. 2009). Although the appellate courts were to review the evidence in a neutral light, the courts were still required to defer to the factfinder's credibility and weight determinations. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The court pointed out in *Brooks* that this

created an inconsistency, and the court of criminal appeals resolved this inconsistency by adopting one evidentiary standard for every sufficiency review. *Brooks*, 2010 WL 3894613, at \*14. The court adopted the legal sufficiency standard, as set out in *Jackson v. Virginia*. We must therefore now view the evidence in a light most favorable to the jury's determination of credibility and weight for any sufficiency challenge. *See id* at \*8. Accordingly, even though Rosas appeals the factual sufficiency of the evidence, we will review the evidence in a light favorable to the jury's verdict as set forth in *Brooks*.

A person commits aggravated sexual assault if that person knowingly or intentionally "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; [or] causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent" and if the accused forced participation with the use of physical force and violence and, with words or acts, placed the complainant in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 22.021(a)(1)(A), (a)(2)(A) (West Supp. 2010).

Rosas contends that because the case came down to a "he said/she said," the evidence is so lacking due to the complainant's lack of credibility that no rational jury could have found him guilty beyond a reasonable doubt.

The complainant's testimony that Rosas penetrated her anus and vagina with his penis and fingers, and mouth with his penis without her consent is alone sufficient to support the convictions for aggravated sexual assault. *See Briseno v. State*, 293 S.W.3d 644, 646 (Tex. App.—San Antonio 2009, no pet.) (quoting *Tinker v. State*, 148 S.W.3d 666,669 (Tex. App.—Houston [14th Dist.] 2004, no pet.)); *see also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding that testimony by complainant that defendant's sexual organ penetrated complainant's sexual organ without complainant's consent is sufficient evidence of penetration);

*Ponce v. State*, 299 S.W.3d 167, 174 (Tex. App.—Eastland 2009, no pet.) (same). Although Rosas argues the complainant's testimony was incredible, "[i]t is the sole province of the jury to weigh the credibility of the witnesses and testimony." *Schmidt v. State*, 232 S.W.3d 66, 68 (Tex. Crim. App. 2007). In that same vein, the jury may choose to believe or disbelieve all or part of the complainant's testimony. *See Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). At no time was there conflicting evidence that the complainant lied to either Officer Christian, the sexual assault nurses, or on the stand. It is apparent the jury chose to believe the complainant's testimony.

Rosas also argues that had the complainant been subject to a number of sexual assaults over several hours, there would be more DNA evidence. A forensic examiner testified the only DNA evidence he found was the complainant's DNA on Rosas's hands. However, the complainant testified Rosas did not ejaculate during the entire encounter, and moreover, physical evidence is not required to prove aggravated sexual assault. *See Tinker*, 148 S.W.3d at 669.

When viewing the evidence in a light most favorable to the verdict, we hold the evidence was sufficient to support the jury's finding of guilt beyond a reasonable doubt. Therefore, we overrule Rosas's sole point of error.

## CONCLUSION

Based on the foregoing, we hold Rosas's sole point of error is without merit and we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish