

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0076-08

### ANTONIO SCHMIDT, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### HALE COUNTY

**HERVEY, J.,** delivered the opinion for a unanimous Court.

### O P I N I O N

A jury convicted appellant of retaliation by threat (a third-degree felony) and sentenced him

to seven years' confinement and a $7,000 fine. The indictment alleged that appellant threatened to

harm the victim "by an unlawful act, to-wit: striking" the victim in retaliation for or on account of

her services as a prospective witness.[1] The evidence shows that appellant struck the victim during

---

[1] *See* § 36.06(a)(1)(A), TEX. PEN. CODE (person commits offense of retaliation if he harms or threatens to harm another by an unlawful act in retaliation for the other's service as a prospective witness).

a prolonged attack in which he "yelled at, cursed, grabbed, pushed, kicked, dragged, and punched the victim." *See Schmidt v. State*, 232 S.W.3d 66, 67 (Tex.Cr.App. 2007) (*Schmidt I*). The State claimed at trial that appellant attacked the victim, at least in part, because the victim had given the police a statement that appellant thought might result in him going to prison. *See id*. ("On the morning of the alleged offense, Appellant was angry at the victim because she had given a statement to the police about something that had happened in Dallas. He yelled and cursed at the victim and screamed, "You stupid b__. I'm probably going to have to do time because of you!"). The defense claimed that appellant attacked the victim solely because of personal issues in their on-again, off-again, four-year interpersonal relationship unrelated to the victim's statement to the police.

The court of appeals decided that the evidence was legally insufficient to support a finding that appellant threatened to harm the victim because "one cannot simultaneously be threatened with harm while the threatened harm is being inflicted." *See id*. The State claimed on discretionary review in this Court that "[t]he fact that Appellant harmed the victim by striking her, does not mean that by the act of striking her, he did not also threaten to harm her."[2] The State prevailed on this

---

[2]

The State's argument on discretionary review was also consistent with its opening statements at trial:

> [STATE]: We believe the evidence will show you that [appellant] was very upset with [the victim] because she had acted as a witness or a prospective witness by giving these statements against him for something else, **and that he did threaten her by striking her**.
>
> * * *
>
> And so I want you to listen very closely to testimony in this case. And whether you find an assault occurred or not, **we will ask you to find that the actions that he took by striking [the victim] were threatening to her** and that those threats were made in retaliation for her acting as a prospective witness.

(Emphasis supplied).

claim, and the case was remanded to the court of appeals for further proceedings. *See Schmidt I*, 232 S.W.3d at 68-69 (evidence that appellant, among other things, struck the victim during the prolonged attack was legally sufficient to prove that he threatened to harm her).

On remand, the court of appeals decided that the trial court reversibly erred in denying appellant's requests for jury instructions on the lesser offenses of assault causing bodily injury (a Class A misdemeanor)[3] and assault by threatening to cause imminent bodily injury (a Class C misdemeanor).[4] *See Schmidt v. State*, No. 07-04-0480-CR, slip. op. at 7-10 (Tex.App.–Amarillo, delivered November 20, 2007) (unpublished) (*Schmidt II*). The court of appeals decided that these were lesser-included offenses of the charged retaliation-by-threat offense under this Court's decision in *Hall v. State*, which held that the determination of whether an offense is a lesser-included offense under Article 37.09(1), TEX. CODE CRIM. PROC., is made by "comparing the elements of the greater offense, as the State pled it in the indictment, with the elements in the statute that defines the lesser offense," and then determining whether the elements of the lesser offense are "established by proof of the same or less than all the facts required to establish the commission of the offense charged." *See Hall v. State*, 225 S.W.3d 524, 525, 536 (Tex.Cr.App. 2007).[5]

Applying *Hall*, the court of appeals decided that, in establishing the elements of the

---

[3] *See* § 22.01(a)(1), TEX. PEN. CODE (person commits offense of assault if the person, among other things, causes bodily injury to another person).

[4] *See* § 22.01(a)(2), TEX. PEN. CODE (person commits offense of assault if the person, among other things, threatens another with imminent bodily injury).

[5] Article 37.09(1) provides that an offense is a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged."

retaliation-by-threat offense as pled in the indictment (i.e., that appellant threatened to harm the victim "by an unlawful act, to-wit: striking" the victim), the State was required to prove these lesser offenses, specifically that appellant's act of striking the victim was "the legal equivalent of causing bodily injury" and "a threat to cause imminent bodily injury." *See Schmidt II*, slip op. at 7-10.[6] After setting out the statutory elements of the retaliation-by-threat offense, as the State pled it in the indictment, and the statutory elements of assault causing bodily injury and assault by threatening to cause imminent bodily injury, the court of appeals' opinion states:

> Appellant maintains that these [lesser] offenses are lesser included offenses because they are established by proof of less than all the facts required to establish the offense of retaliation, to-wit: they do not require proof that the assault was in retaliation for or on account of the services of [the victim] as a prospective witness.

> Therefore, whether assault causing bodily injury is a lesser included offense of retaliation, as charged, turns on whether proof of *threaten to harm* or *striking* is legally equivalent to proof of *bodily injury*. (Emphasis added). Likewise, whether assault by threatening to cause imminent bodily injury is a lesser included offense of retaliation, as charged, turns on whether proof of *threaten to harm* or *striking* is legally equivalent to proof of *threaten to cause imminent bodily injury*. (Emphasis added).

> Under [dictionary definitions of "strike," "bodily injury," "harm," and "imminent"], to strike someone would be the legal equivalent of causing bodily injury to that person and a threat to cause imminent bodily injury would necessarily constitute a

---

[6]

We do not understand the State to challenge, and we did not exercise our discretionary authority to review, the court of appeals' decision that appellant's act of striking the victim was "the legal equivalent of causing bodily injury" and "a threat to cause imminent bodily injury." For purposes of this case, we will assume that appellant's act of striking the victim was "the legal equivalent of causing bodily injury" and "a threat to cause imminent bodily injury." *See also Marrow v. State*, 39 S.W. 944 (Tex.Cr.App. 1897) (defendant assaulted prosecutor by kicking him); *Wawrykow v. State*, 866 S.W.2d 96, 99-100 (Tex.App.–Beaumont 1993, pet. ref'd) (evidence sufficient to support defendant's assault of police officer by hitting officer with his fists even though there was no direct evidence showing that defendant's blows caused officer physical pain or impairment) and at 101 (Burgess, J., concurring) (reasonable to infer that blows to head with closed fist will cause some amount of physical pain as opposed to a "push" to the chest).

threat to harm someone. Furthermore, during a prolonged assault, the aggressor's actions can include both threats and actual harm. *Schmidt* [*I*], 232 S.W.3d at 67. Therefore, because the difference between the [retaliation] offense as charged and the lesser offenses requested by Appellant is established by proof of less than all the facts required to establish the commission of the offense charged, the offenses of assault causing bodily injury and assault by threatening to cause imminent bodily injury are lesser included offenses of the felony offense of retaliation, as charged in this case.

*See Schmidt II*, slip op. at 9-10 (emphasis in original).

We granted the State's petition for discretionary review of this decision. The grounds upon which we granted review of this decision state:

> 1) Is assault by causing bodily injury a lesser included offense of retaliation when the indictment alleges that the defendant threatened to harm another by an unlawful act, to wit: striking?
>
> 2) Is assault by threatening imminent bodily injury a lesser included offense of retaliation when the indictment alleges that the defendant threatened to harm another by an unlawful act, to wit: striking?
>
> 3) In determining whether a lesser offense is included within the indictment, are all the allegations considered-even surplusage and strictly evidentiary facts-or only the elements and statutory manner and means of the offense?
>
> 4) Is a lesser included offense raised with respect to an element regarding the defendant's motive for committing an unlawful act when there is no evidence that negates the motive alleged, but there is evidence of an additional motive to commit the unlawful act?

The State argues in its brief that it was not required to prove that appellant struck the victim in order to establish the retaliation-by-threat offense as pled in the indictment because the indictment alleged that appellant "threatened to strike, not that he did strike." In its brief, the State argues:

> The Court of Appeals' first mistake relates to its holding that assault by causing bodily injury was included within the allegations in the indictment. The Court of Appeals misconstrued the elements of retaliation as alleged in the indictment by viewing them in light of the evidence at trial. The indictment alleged that Appellant threatened to harm another, to wit: [the victim] by an unlawful act, to wit: striking. Striking was the unlawful act that Appellant threatened to carry out, and the means

by which Appellant communicated his threat are not stated in the indictment. **In other words, the indictment alleged that Appellant threatened to strike, not that he did strike**. The Court of Appeals however, interpreted the indictment to mean that Appellant either threatened to harm [the victim] or struck [the victim].

Although the proof shows that he both threatened and struck, *Hall* requires the reviewing court to examine the allegations in the indictment, not the proof at trial. The Court of Appeals cited [*Schmidt I*] for the proposition that during a prolonged assault, the aggressor's actions can include both threats and harm. [Citation omitted]. But [*Schmidt I*'s] recognition that the State could use evidence of striking as proof of the threat dealt with sufficiency of the evidence. It was not a holding that the indictment allegations required actual striking in order to prove the threat was made. Therefore, even if assault by bodily injury was shown by the *facts* at trial, proof of striking was not a fact necessary to prove the allegation of a threat to harm by unlawful act: to wit: striking.

An allegation that Appellant threatened to strike the victim could have been proved by his making a fist and cocking his arm back as if to hit her, or it could have been made by Appellant saying, "I'm going to hit you." **Therefore, striking is not necessarily included within an allegation of only a *threat* to strike**. (Citation and parenthetical omitted). Because the indictment in this case did not require proof of striking or any kind of injury, the offense of assault by causing bodily injury was not a lesser included offense in this case.[7]

(Emphasis in italics in original and emphasis in bold added).[8]

The State, however, claimed in *Schmidt I* that "[t]he fact that Appellant harmed the victim

---

[7]

We note that the State did not claim in its discretionary-review petition, as it appears to have in its brief on direct appeal, that the indictment in this case did not require proof of "any kind of injury." *See* Footnote 6.

[8]

With respect to the lesser offense of assault by threatening imminent bodily injury, the State argues that the evidence adduced at trial could have established the charged retaliation-by-threat offense without also establishing a threat of imminent bodily injury. The State argues:

Appellant could have been convicted of retaliation under the instant indictment if the facts showed he told the victim that if he had to go to prison because of her, he would beat her up when he got out. But these facts would not have been sufficient to prove a threat of *imminent* bodily injury.

(Emphasis in original).

by striking her, does not mean that by the act of striking her, he did not also threaten to harm her." This necessarily included the claim that appellant's act of actually striking the victim was included within the allegations in the indictment (we will not presume that the State would claim in *Schmidt I* that appellant's conviction could have been upheld on a factual theory not set out in the indictment and the jury charge). *See Wooley v. State*, slip op. at 13-14 (Tex.Cr.App. No. PD-0861-07, delivered June 25, 2008) (due process prevents appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury). With the State having prevailed on this claim in *Schmidt I*, we believe that the State is judicially estopped from now claiming that the indictment alleged that appellant "threatened to strike, not that he did strike." *See Maine v. New Hampshire*, 532 U.S. 742, 749-51 (2001) (equitable rule of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase).[9]

And we are not persuaded by the State's argument that the allegation in the indictment that

---

[9] We further note that had the State not prevailed on this claim in *Schmidt I*, then it is almost certain that we could not have upheld appellant's conviction on the factual theory presented to the jury (i.e., the theory that appellant threatened to harm the victim by actually striking her) and that appellant would have been entitled to a reversal of his conviction. *See Wooley*, slip op. at 13-14; *see also Maine v. New Hampshire*, 532 U.S. at 751 (a consideration in whether to apply equitable rule of judicial estoppel "is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped") and at 755 ("In short, considerations of equity persuade us that application of judicial estoppel is appropriate in this case. Having convinced this Court to accept one interpretation of 'Middle of the River' [in a boundary dispute between New Hampshire and Maine], and having benefitted from that interpretation, New Hampshire now urges an inconsistent interpretation to gain an additional advantage at Maine's expense. Were we to accept New Hampshire's latest view, the 'risk of inconsistent court determinations,' [citation omitted], would become a reality. We cannot interpret 'Middle of the River' in the 1740 decree to mean two different things along the same boundary line without undermining the integrity of the judicial process.").

appellant threatened to harm the victim "by an unlawful act, to-wit: striking" the victim should be construed to allege only that "appellant threatened to strike, not that he did strike." We believe that such an indictment can be construed to allege that appellant threatened to harm the victim either by threatening to strike her or by actually striking her (as confirmed by the State's opening statements at trial).[10] Construing the indictment in this case to include an allegation of actual striking finds further support in our decision in *Schmidt I* in which we accepted the State's argument that a threat of harm can arise from actual striking. *See Schmidt I*, 232 S.W.3d at 68 ("The State argues in its brief, and we agree, that the court of appeals' bright-line rule defines "threaten" too narrowly by assuming that a threat of harm and harm are mutually exclusive.").[11]

Having decided that the indictment in this case can be construed to allege that appellant actually struck the victim and that the State is judicially estopped from claiming otherwise, we agree with the court of appeals that the lesser offenses of assault causing bodily injury and assault by threatening to cause imminent bodily injury were established by proof of less than all the "facts required" to establish the commission of the charged retaliation-by-threat offense as the State pled it in the indictment. *See Hall*, 225 S.W.3d at 525, 536. In establishing the commission of the

---

[10] We believe that a drafter of an indictment, wanting to draft an indictment alleging only that a defendant "threatened to strike, not that he did strike," could do so with an allegation that the defendant threatened to harm the victim "by an unlawful act, to-wit: threatening to strike" the victim.

[11] Another retaliation-by-threat case recently decided by this Court helps to illustrate this. *See Pollard v. State*, __ S.W.3d __ (Tex.Cr.App. No. PD-0363-08, delivered February 11, 2009). Like this case, *Pollard* is a retaliation-by-threat case in which the indictment alleged that Pollard threatened to harm the victim "by an unlawful act, to-wit: committing an assault upon [the victim] causing bodily injury." Unlike this case, however, the evidence in *Pollard* showed only a threat to commit an assault, not an actual assault. *See Pollard*, slip op. at 2. We believe that this case and *Pollard* demonstrate how the indictments in these cases can be construed to allege a threat of harm (e.g., a threat to strike) or actual harm (e.g., actual striking).

charged retaliation-by-threat offense, the indictment required the State to prove that appellant struck the victim which, for purposes of this case,[12] also establishes assault causing bodily injury and, pursuant to our decision in *Schmidt I* that actual striking can also constitute evidence of a threat to strike, assault by threatening to cause imminent bodily injury. These offenses, therefore, meet the lesser-included-offense definition of Article 37.09(1) in this case. Grounds one and two are overruled.

The State claims in ground three that, even if the indictment can be construed to include an allegation that appellant struck the victim, the "to-wit: striking" allegation should not be considered in a lesser-included-offense analysis under *Hall*, because "striking" was not a "fact required" to establish the charged retaliation-by-threat offense. In support of this claim, the State argues that the "to-wit: striking" allegation was not required to be pled and is unnecessary surplusage that is "merely descriptive of an element but not statutorily required." The State also argues that appellant could have been convicted of the same retaliation-by-threat offense under an indictment omitting the "to-wit: striking" allegation and merely alleging, for example, "that appellant threatened to harm the victim by an unlawful act in retaliation for the victim's services as a prospective witness."

Our decision in *Hall* does not support the State's position. The murder indictment in *Hall* alleged that the defendant caused an individual's death by "shooting the individual with a gun." *See Hall*, 225 S.W.3d at 536. The State's argument in this case that the non-statutory, manner and means allegation of "striking" should not be considered a "fact required" to establish the charged retaliation-by-threat offense is contrary to our decision in *Hall* because *Hall* considered the non-

---

[12] *See* Footnote 6.

statutory, manner and means allegation of "shooting the individual with a gun" to be a "fact required" to establish the charged murder offense.[13]  *See id*.  In arguing that the non-statutory allegation of "striking" should not be considered in a lesser-included-offense analysis under *Hall*, the State is essentially arguing that this Court should apply the "strict-statutory" or "cognate" approach,[14] which *Hall* expressly rejected in favor of the "cognate-pleadings" approach.[15]  *See Hall*, 525-26, 535 (holding that the "pleadings approach is the sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction").

In addition, that appellant could have been convicted of this retaliation-by-threat offense under an indictment omitting the "to-wit: striking" allegation does not necessarily make this allegation unnecessary surplusage.  We note that this Court's decision in *Doyle v. State* would support a holding that a defendant's timely motion to quash such an indictment would require the State to provide the "to-wit: striking" allegation for purposes of providing adequate notice.  *See Doyle v. State*, 661 S.W.2d 726, 729-31 (Tex.Cr.App. 1983) (defendant's timely motion to quash a "nonfundamentally defective" retaliation-by-threat indictment entitled the defendant to notice of

---

[13]

The non-statutory, manner and means allegation in this case of "striking" parallels the non-statutory, manner and means allegation in *Hall* of "shooting the individual with a gun."

[14]

*See Hall*, 225 S.W.3d at 525-26 ("strict-statutory" or "cognate" approach permits a lesser-included-offense instruction "only when all of the statutory elements of the lesser offense are contained within the statutory elements of the greater offense").

[15]

*See Hall*, 225 S.W.3d at 526 ("cognate-pleadings" approach "looks to the facts and elements as alleged in the charging instrument, **and not just to the statutory elements of the offense**") (emphasis supplied).

"**how** and to whom the threat was made") (emphasis supplied).[16] We, therefore, do not believe that the "to-wit: striking" allegation in appellant's indictment could be considered unnecessary surplusage since, under *Doyle*, a defendant, upon timely request, is entitled to such an allegation in the indictment. *See id*.

A decision that the "to-wit: striking" allegation is a "fact required" to establish the charged retaliation-by-threat offense under *Hall* is also consistent with *Hall's* requirement that the step-one, lesser-included-offense analysis "may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *See Hall*, 225 S.W.3d at 535-36. Without the "to-wit: striking" allegation in the indictment, the step-one, lesser-included-offense analysis under *Hall* would not be "capable of being performed before trial" because it would not be possible to determine before trial the "facts required" to establish the unlawful act element of such a charged retaliation-by-threat offense.[17] Finally, we believe that whatever is left

---

[16]

The State claims that *Doyle* is distinguishable from, and does not apply to, this case because appellant did not file a motion to quash the indictment. We do not see what appellant could have accomplished by filing a motion to quash this indictment. We agree that *Doyle* does not apply to this case, but not because appellant did not file a motion to quash the indictment. *Doyle* does not apply to this case because appellant's indictment alleged what the indictment in *Doyle* did not allege, i.e., how appellant's threat was made (i.e., "to-wit: striking").

[17]

The State also does not suggest how such a retaliation-by-threat indictment would provide a defendant with notice before trial of the "facts required" to establish the unlawful act element of the offense. *See Hall*, 225 S.W.3d at 537 (suggesting that it "might run afoul of the requirements of due process by making it impossible to know before trial what lesser offenses are included within the indictment").

of our "surplusage" jurisprudence speaks more to sufficiency-of-the-evidence issues[18] than it does to determining the "facts required" to establish the statutory elements of the charged offense "as they were modified by the particular allegations in the indictment." *See Hall*, 225 S.W.3d at 536.

The indictment in this case alleged that appellant threatened to harm the victim by an unlawful act, "to-wit: striking." The "to-wit: striking" allegation was how the State pled the "unlawful act" element of the offense and "striking" was, therefore, a "fact required" to establish the commission of this element of the retaliation offense. *See Hall*, 225 S.W.3d at 525 (method of determining whether the allegation of a greater offense includes a lesser offense "should be made by comparing the elements of the greater offense, as the State pled it in the indictment, with the elements in the statute that defines the lesser offense"). Ground three is overruled.

The State claims in ground four that appellant was not entitled to either of the lesser-included-offense instructions under the second step of the analysis for determining whether a lesser-included-offense instruction should be submitted, because there is not even a scintilla of evidence to show that if appellant is guilty, he is guilty of only either one of these lesser-included offenses. *See Hall*, 225 S.W.3d at 536; *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Cr.App. 1993).[19] The

---

[18]

*See Gollihar v. State*, 46 S.W.3d 243, 256-57 (Tex.Cr.App. 2003) (expressly overruling "surplusage law" and an exception to this law "to bring our state courts' sufficiency of the evidence review" in line with federal constitutional requirements); *see generally Fuller v. State*, 73 S.W.3d 250 (Tex.Cr.App. 2002); *Curry v. State*, 30 S.W.3d 394 (Tex.Cr.App. 2000); *Malik v. State*, 953 S.W.2d 234 (Tex.Cr.App. 1997).

[19]

Relying on *Rousseau*, this Court in *Hall*, 225 S.W.3d at 536, reaffirmed that the "evidence adduced at trial" is an important part of the second step of the analysis of whether a jury should be charged on lesser-included offenses:

> The evidence adduced at trial should remain an important part of the court's decision whether to charge the jury on lesser-included offenses. The second step in the

State argues that the court of appeals decided that appellant was entitled to these lesser-included-offense instructions simply because the jury could have disbelieved evidence establishing appellant's retaliatory motive in the absence of other affirmative evidence rebutting this retaliatory motive. Citing to this Court's case law which the State suggests might support such a decision,[20] the State claims that the court of appeals' decision is inconsistent with other case law from this Court holding that "there must be affirmative evidence to rebut the greater element, and the jury may not simply disbelieve evidence establishing the greater." *See, e.g., Hampton v. State*, 109 S.W.3d 437, 439 (Tex.Cr.App. 2003). The State further claims that we should reaffirm cases such as *Hampton* and overrule cases such as *Schweinle* and *Saunders*.[21]

We do not read the court of appeals' opinion to decide that appellant was entitled to the lesser-included-offense instructions simply because the jury could have disbelieved evidence establishing appellant's retaliatory motive. We read its opinion as basing its decision on what it

---

analysis should ask whether there is evidence that supports giving the instruction to the jury. "A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." [Footnote omitted]. In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. [Footnote omitted]. In other words, the evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." [Footnote omitted].

[20]

*See Schweinle v. State*, 915 S.W.2d 17 (Tex.Cr.App. 1996); *Saunders v. State*, 840 S.W.2d 390 (Tex.Cr.App. 1992).

[21]

The State further explains that its "stance . . . in this case" does not conflict with its argument in a recently decided case of *Wasylina v. State*, __ S.W.3d __ (Tex.Cr.App. No. PD-0519-07, delivered January 28, 2009) even though its stance in this case "might be seen as conflicting" with its argument in *Wasylina*. We find it unnecessary to decide whether the State is taking inconsistent positions on another issue in this case.

claimed was affirmative evidence that rebutted appellant's lack of a retaliatory motive. Its opinion

states:

> The defense strategy was, in part, an effort to show that Appellant and the victim had argued over several different subjects, including a relationship between Appellant and another young lady. In this regard, Appellant essentially contends that there was more than a scintilla of evidence that the altercation between Appellant and the victim was due to their dysfunctional personal relationship rather than in retaliation for her service as a prospective witness against Appellant.

> During direct examination, the victim testified as follows:

>> Q. [sic] We argued a little bit about that girl, but I–he said that he wanted to talk to her because she kept calling. And I told him, I said, "You know what? You want to talk to her? I don't care. Because once I leave here today, I'm never talking to you again.["]

> Later, during cross-examination, she explained that she had obtained the girl's phone number and called her to tell her that she and Appellant had been romantically involved for almost four years. She added that the girl did not believe her. The victim also testified that she and Appellant argued over Brittany telling Appellant details about the victim's private life.

> **Based on all the evidence presented, we conclude there was more than a scintilla of evidence that would have permitted the jury to rationally find that the assault was for reasons other than in retaliation for or on account of her services as a prospective witness**. The second prong was met; therefore, the trial court erred in refusing to instruct the jury on the lesser included offenses of assault with bodily injury and assault by threatening to cause imminent bodily injury.

*See Schmidt II*, slip op. at 10-11. (Emphasis supplied).[22]

---

[22]

The State's brief does not address why this and other evidence presented at trial does not affirmatively raise the lesser-included offenses except to argue that "the evidence that Appellant and the victim argued over an additional topic did not rebut or negate the greater element of the offense" and "only offered another reason for Appellant's actions *in addition* to the retaliatory purpose alleged in the indictment." (Emphasis in original). This argument, however, does not address the court of appeals' decision that the lesser-included offenses were raised by "more than a scintilla of evidence that would have permitted the jury to rationally find that the assault was for reasons other than in retaliation for or on account of her services as a prospective witness." *See Degrate v. State*, 712 S.W.2d 755, 756 (Tex.Cr.App. 1986) (discretionary review petition should specifically address court

We note that the evidence also shows that the victim and appellant had broken up, got back together and argued many times in the past. At the time of the assault, the victim and appellant were trying to get back together after the victim had left appellant over him seeing the other girl. The evidence also shows that they argued about several things on the morning of the assault including issues about their interpersonal relationship and the victim's statement to the police. We also believe that the record reflects that the evidence was conflicting on whether appellant referred to the victim's statement to the police while he was assaulting her and whether his reason for assaulting her was in any way related to her statement to the police. For example:

> Q. [STATE]: Was he saying anything to you while he was kicking you?
>
> A. [VICTIM]: Just calling me a bitch and a ho.
>
> Q. Did he ever mention anything else about him having to go to jail or do time because of you?
>
> A. No.
>
> * * *
>
> Q. [DEFENSE]: Okay. Kimberly, what I asked you was: He was yelling at you from the back. He wasn't yelling at you about–he wasn't yelling at you about the statement or anything that you told the police, was he?
>
> A. No.
>
> Q. You don't know what he was thinking while he was back there, do you?
>
> A. No.
>
> Q. And then when he came outside to get you, he still wasn't yelling at you about what happened between–what you may or may not have told the police, was he?
>
> A. No.

---

of appeals' decision). The court of appeals did not decide that the lesser-included offenses were raised by evidence that appellant assaulted the victim over appellant's actions in addition "to the retaliatory purpose alleged in the indictment."

Q. So at that time what could have been on his mind could have been the personal things that you told Bridgett or Brittany, correct?

A. Yes.

Q. Could have been the issues that we've talked about regarding this other girl, correct?

A. Yes.

* * *

Q. And while you-all were having this argument or altercation out on the porch, [appellant] didn't really say much, did he? Called you some names, but he didn't say much else, did he?

A. No.

Q. So he didn't say anything out there that would tell you what was going on his [sic] mind--

A. He--

Q. –why that was going on?

A. He told me while he was pushing me and hitting me and stuff, that–he said–he didn't say the exact words, but he said, "You stupid bitch, I'm going to have to do time because of you."

Q. Well, as I understood your testimony earlier, you said that he told you that while you-all were arguing verbally--

A. He said that to me several times.

Q. Let me finish my question, please. My understanding of your testimony–and I may be wrong, but my recollection was that you said it was in the living room when you-all were verbally arguing; is that correct?

A. Yes.

Q. And my question to you then is: he didn't say much to you out on the porch, did he?

A. No.

Q. And out on the porch when you-all were having that altercation, he did not say

anything that would indicate to you what was going on in his mind, did he?

A. Yes, he did.

Q. That's different from your testimony earlier when [the State] was asking you questions, isn't it?

A. I'm not for sure.

Q. In response to [the State's] questions about what happened out on the porch, did you tell him that [appellant] just called you names?

A. Yes, he called me names.

Q. But you didn't tell him that he said anything else, did you?

A. Well, he had said that to me.  He said that to me a few times during the day.

We decide that this record contains more than a scintilla of affirmative evidence that rebuts "the retaliatory purpose alleged in the indictment" and establishes the lesser-included offenses of assault with bodily injury and assault by threatening to cause imminent bodily injury as "valid, rational alternative[s] to the charged offense."  *See Hall*, 225 S.W.3d at 536.  We, therefore, find it unnecessary to address the State's claim that we should overrule this Court's decisions in *Schweinle* and *Saunders*.

The judgment of the court of appeals is affirmed.

Hervey, J.

Delivered: March 11, 2009
Publish