**Opinion filed September 8, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00164-CV

_____

## IN THE MATTER OF A.C., A JUVENILE

**On Appeal from the County Court**

**Brown County, Texas**

**Trial Court Cause No. 2133**

### MEMORANDUM OPINION ON MOTION FOR REHEARING

On original submission, we held that the trial court did not abuse its discretion by refusing to grant a hearing on A.C.'s motion for new trial alleging newly discovered evidence and jury misconduct, that the omission from the jury charge of an allegation contained in the petition was an immaterial variance, and that the omission from the jury charge of the definition of serious bodily injury did not cause egregious harm. A.C. filed a motion for rehearing, claiming that we failed to properly apply the standard for granting a hearing on a motion for new trial, that we should have evaluated the omission of the allegation from the jury charge as jury charge error rather than as a variance because A.C. did not challenge the sufficiency of the evidence, and that we erred in holding that the omission from the jury charge of the definition of

serious bodily injury did not cause egregious harm. We deny the motion for rehearing, but we withdraw our opinion and judgment dated April 7, 2011, and substitute the following.

The jury found that A.C. had engaged in delinquent conduct by committing the offense of aggravated assault. The county court, sitting as a juvenile court, committed A.C. to the Texas Youth Commission for an indeterminate period of time not to exceed his twenty-first birthday. We affirm.

I. *Background Facts*

T.N. lived in the same neighborhood as A.C. One evening, T.N. was riding his bicycle home when he went down an alley behind A.C.'s house. T.N. testified that A.C. and A.C.'s brother knocked him off his bicycle and hit him repeatedly. Eventually, A.C. and his brother stopped and went away. T.N. testified that he was bleeding a lot from his nose and mouth and that he was missing a few teeth. T.N. got back on his bicycle and rode home.

At home, T.N. told his grandmother that his injuries were caused by a bicycle accident. T.N. explained that he lied to his grandmother because he was afraid of being beaten up again but that his grandmother did not believe him. She took him to the emergency room in Brownwood. Hospital staff told them that T.N. would have to go to another hospital. They then drove to Cook Children's Medical Center in Fort Worth. From there, he was sent to John Peter Smith Hospital for surgery. As a result of the assault, T.N. lost three teeth and had a broken nose and a cracked jaw. T.N. told medical personnel at all three hospitals that he had been in a bicycle accident.

A few days later, T.N. revealed to his family that A.C. and A.C.'s brother had assaulted him. They contacted the police. Officer Robert Mullins of the Brownwood Police Department investigated. Although he could not rule an accident out, Officer Mullins did not think T.N.'s injuries were consistent with a bicycle accident because they were too centralized. T.N. told Officer Mullins that he was afraid of retaliation from A.C.

T.N. claimed that there were three other people in the alley at the time of the assault. Two of these people testified at the adjudication hearing. Both stated that they saw T.N. in the alley that night, but they also testified that they did not see or hear T.N. being assaulted.

The defense called several witnesses to testify that T.N. had given differing stories about the incident. T.N. admitted that he told several people that his injuries were caused by a bicycle accident. He also admitted telling people that his family forced him to say that his injuries were

caused by an assault.  Finally, there was testimony that T.N. was mentally slow and easily manipulated.

The jury found that A.C. had engaged in delinquent conduct by intentionally, knowingly, or recklessly causing serious bodily injury to T.N. by striking him in the face.

## II. *Issues*

A.C. raises five issues on appeal.  First, he argues that the trial court erred by failing to grant a hearing on his motion for new trial alleging newly discovered evidence.  In his second and third issues, he argues that his due process rights were violated when the trial court instructed the jury to find that he had engaged in delinquent conduct without requiring it to be convinced beyond a reasonable doubt of all the required allegations.  In his fourth issue, A.C. contends that the trial court erred by failing to include a definition of serious bodily injury in the jury charge.  Fifth, A.C. argues that the trial court erred by failing to grant a hearing on his motion for new trial alleging jury misconduct.

## III. *Did the Trial Court Err in Failing to Grant a Hearing on A.C.'s Motion for New Trial?*

A.C. filed a motion for new trial alleging newly discovered evidence and jury misconduct and requesting an evidentiary hearing.  The trial court did not hold a hearing.  A.C. argues that this was error.

### A.  *Newly Discovered Evidence.*

A.C. alleged that he was entitled to a new trial because of newly discovered evidence and provided three supporting affidavits.  A.C. alleged that this evidence was unknown to him at the time of trial, that his failure to discover the evidence was not due to a lack of due diligence, that the evidence would probably bring about a different result at a new trial, and that it was not cumulative, corroborative, impeaching, or collateral.

First, David Franklin Chamberlain, a neighbor of A.C., testified by affidavit that on the evening of the alleged assault, he saw T.N. have a bicycle accident in the alley in which he flew over the bicycle's handlebars and hit the ground face first.  Chamberlain stated that he did not come forward sooner because he learned only after the adjudication hearing that A.C. was on trial for causing T.N.'s injuries.

Second, Arely Guadalupe Sandoval, a student at Brownwood High School and a defense witness at the adjudication hearing, submitted an affidavit alleging that, while he was waiting to testify, he saw T.N. exiting the courthouse.  T.N. met his brother at the door.  Sandoval stated

3

that T.N's brother asked, "Did you lie?" T.N. responded, "Yes, but it's not working." Sandoval believed that T.N. meant that he had lied in court. Sandoval immediately told A.C.'s father what he had heard but did not tell the county attorney or A.C.'s attorney because he did not know that he was allowed to do so.

Third, Anthony Sanchez Sr., the father of a defense witness, submitted an affidavit stating that his former girlfriend, Sherry Nichols, was T.N.'s aunt. Sanchez and Nichols have a daughter. Their daughter is married and has a daughter of her own. After Sanchez separated from Nichols, he claimed that she accused him of molesting their daughter. Sanchez met with Brownwood Police Department officers and established that he had no access to his daughter during the time period in which the molestation allegedly occurred. Sanchez claimed that he learned Nichols had accused him of molestation because her mother, T.N.'s grandmother, had told her to do so. Thus, while he had no knowledge of the case, he was wary of any allegations coming from T.N.'s family. Moreover, just before trial, his daughter threatened to prohibit any visitation with his granddaughter if he allowed his son to testify at A.C.'s adjudication hearing. This threat reinforced his belief that T.N. may have been influenced to make false allegations against A.C.

In 2009, the legislature amended TEX. FAM. CODE ANN. §§ 51.17(a) and 56.01 (Vernon Supp. 2010) to provide that motions for new trials are governed by TEX. R. APP. P. 21. Act of June 19, 2009, 81st Leg., R.S., ch. 642 §§ 1-2, 2009 Tex. Gen. Laws 1438 (relating to the rules governing a motion for new trial in juvenile cases). This amendment applies to all juvenile proceedings whose disposition takes place after September 1, 2009. *Id*. §§ 3-4. A.C.'s disposition order was signed on March 6, 2009. His motion for new trial is, therefore, not subject to the amendment. Under prior law, a motion for new trial was governed by the Texas Rules of Civil Procedure. *See In re M.R.*, 858 S.W.2d 365, 366 (Tex. 1993) (juveniles are required to file a motion for new trial to assert evidentiary and procedural errors, including factual sufficiency and jury misconduct).

When a motion alleges facts that, if true, would entitle the movant to a new trial, a trial court is obligated to hear such evidence. *Hensley v. Salinas*, 583 S.W.2d 617, 618 (Tex. 1979). To obtain a new trial based on newly discovered evidence, a defendant must show that (1) the evidence was unknown to the defendant at the time of trial, (2) the failure to discover the evidence was not due to defendant's want of diligence, (3) the evidence is material in that it

would probably bring about a different result in another trial, and (4) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715, 720-21 (Tex. 2003). Each of these elements must be established by an affidavit of the party. *In re Thoma*, 873 S.W.2d 477, 512 (Tex. Rev. Trib. 1994, no appeal); *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 844 (Tex. App.—Dallas 2008, no pet.). Except when jury misconduct is alleged, the trial court's decision to hold an evidentiary hearing on a motion for new trial is reviewed for abuse of discretion. *See* TEX. R. CIV. P. 327(a); *Hamilton v. Williams*, 298 S.W.3d 334, 338 (Tex. App.—Fort Worth 2009, pet. denied). To determine whether the trial court abused its discretion, we must decide ultimately whether the trial court acted without reference to any guiding rules or principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

A.C.'s motion for new trial did not establish that his failure to discover the evidence was not due to a want of due diligence. While Chamberlain stated that he did not come forward earlier because he did not know about the allegations against A.C., the motion for new trial did not explain why A.C. could not have discovered Chamberlain's testimony earlier with the exercise of due diligence. Likewise, there is no explanation as to why the evidence provided by Sanchez, whose son was a witness for A.C. at the adjudication hearing, could not have been discovered before trial. In the absence of a showing of due diligence, the trial court was not required to hold a hearing. *See Neyland v. Raymond*, 324 S.W.3d 646, 652-53 (Tex. App.—Fort Worth 2010, no pet.). Moreover, the facts alleged in Sandoval's and Sanchez's affidavits primarily impeached the credibility of T.N. and, thus, would not be grounds for a new trial. *See Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 132 (Tex. App.—Waco 2005, pet. denied) (newly discovered evidence alleging that a witness committed perjury was cumulative, impeaching, and not grounds for a new trial).

We cannot say that the trial court abused its discretion by failing to hold a hearing on A.C.'s motion for new trial based upon newly discovered evidence. A.C.'s first issue is overruled.

*B. Jury Misconduct.*

In support of his motion for new trial because of jury misconduct, A.C. presented the affidavit of Juror Adrian Negrete. On appeal, A.C. focuses on Negrete's allegation that the jury foreman failed to read the charge of the court aloud before beginning deliberations.

A trial court shall hold a hearing on a motion for new trial supported by an affidavit alleging jury misconduct. Rule 327(a). However, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations, nor may a juror testify in an affidavit about matters that are otherwise inadmissible. TEX. R. CIV. P. 327(b); TEX. R. EVID. 606(b) (prohibiting juror testimony as to matters occurring during jury deliberations but permitting juror to testify (1) as to whether outside influence was improperly brought to bear upon any juror and (2) to rebut a claim that a juror was not qualified to serve). Jury deliberation is the formal process beginning after the close of evidence and the jury charge, when the jury retires to weigh the evidence to arrive at a verdict. *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 371 (Tex. 2000).

Here, Negrete's affidavit involved matters that occurred after the jury had retired to the jury room to deliberate. Thus, the affidavit involved matters that occurred during jury deliberations; it did not involve an outside influence or a juror's qualification to serve. As such, the affidavit was not competent to support a motion for new trial. *See* Rule 327(b); Rule 606(b). The trial court did not abuse its discretion by refusing to hold a hearing on the motion for new trial concerning the allegations of jury misconduct. A.C.'s fifth issue is overruled.

IV. *Did the Trial Court Err in the Charge it Submitted to the Jury?*

In Issues Two and Three, A.C. argues that the absence from the jury charge of the allegation that he caused T.N.'s injuries "with a closed fist" deprived him of notice and of the right to have a jury find beyond a reasonable doubt all facts necessary for an adjudication of delinquency. In Issue Four, A.C. contends that the trial court erred by failing to include in the jury charge a definition of "serious bodily injury." A.C. did not object to the jury charge on these grounds. The State argues that these issues have not been preserved for review.

The Juvenile Justice Code[1] does not contain a specific provision governing jury charges. *In re A.A.B.*, 110 S.W.3d 553, 555-56 (Tex. App.—Waco 2003, no pet.). On appeal, juvenile delinquency proceedings are to be governed by the civil rules of appellate procedure as far as

---

[1]TEX. FAM. CODE ANN. tit. 3 (Vernon 2008 & Supp. 2010).

practicable. *In re D.I.B.*, 988 S.W.2d 753, 756 (Tex. 1999). Generally, in order to preserve a complaint for appellate review, a party must have made a timely, specific objection in the trial court. TEX. R. APP. P. 33.1(a)(1).

However, juvenile delinquency proceedings are quasi-criminal in nature. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). General rules requiring preservation of error in the trial court "cannot be applied across the board in juvenile proceedings." *Id.* The Texas Supreme Court has recognized that its "discredited" doctrine of fundamental error still applies in this context. *See In re B.L.D.*, 113 S.W.3d 340, 350-51 (Tex. 2003) (explaining the use of fundamental error in juvenile delinquency proceedings and holding that fundamental error is not applicable to parental rights termination cases). The court has noted that it is "unwise and problematic to apply one preservation rule in adult, criminal proceedings and another, stricter rule in juvenile cases." *In re C.O.S.*, 988 S.W.2d at 767. Thus, precedent from analogous adult criminal proceedings may be instructive. *See id.* at 765-67 (examining adult criminal jurisprudence to determine when preservation is required in juvenile delinquency proceedings); *see also In re D.I.B.*, 988 S.W.2d at 757 (examining adult criminal jurisprudence to determine when harm analysis should be performed in juvenile delinquency proceedings).

In particular, the Texas Supreme Court has looked to *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), for guidance on when preservation is required under Rule 33.1, a rule that applies to both civil and criminal proceedings. *In re C.O.S.*, 988 S.W.2d at 765-67. In determining whether error must be preserved in order to be raised on appeal, *Marin* recognized three categories of rights and requirements. *Marin*, 851 S.W.2d at 279. First, there are absolute systemic requirements such as laws governing the jurisdiction of the courts and separation of powers. *Id.* Second, there are the fundamental rights of litigants that must be implemented unless expressly waived. *Id.* at 278-79. These include a criminal defendant's right to a jury trial and to assistance of counsel, as well as statutory requirements that direct the trial court to act in a specific way. *Id.* at 279-80. Third, there are the rights of litigants that are to be implemented upon request. *Id.* at 279. Only error regarding this third category of rights may be waived by failure to object at trial. *Id.* at 279-80.

We note, however, that preservation of jury charge error in adult criminal proceedings is usually governed by TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006). *See Saldano v. State*, 70 S.W.3d 873, 887-88 (Tex. Crim. App. 2002) (distinguishing between preservation of

7

jury charge error, which the legislature has chosen to regulate, and other types of error whose preservation is determined generally under *Marin*); *Ieppert v. State*, 908 S.W.2d 217, 219 (Tex. Crim. App. 1995) (describing Article 36.19 as containing "hybrid forfeiture/harmless error provisions"). Article 36.19 permits appellate courts to find reversible error in the trial court's charge to the jury, to which no objection was made, when that error resulted in egregious harm to the defendant. Article 36.19; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Article 36.19 applies only to those issues upon which a trial court has a duty to instruct the jury, such as the elements of the offense charged, or those issues that have been timely brought to the court's attention. *Posey v. State*, 966 S.W.2d 57, 63-64 (Tex. Crim. App. 1998). Unlike Rule 33.1, Article 36.19 does not specifically apply to juvenile delinquency proceedings. *In re A.A.B.*, 110 S.W.3d at 556.

Nevertheless, courts have used Article 36.19 and *Almanza* to determine whether jury charge error has been preserved in juvenile delinquency proceedings. *See In re K.W.G.*, 953 S.W.2d 483, 488 (Tex. App.—Texarkana 1997, pet. denied) (holding that the *Almanza* egregious harm standard was applicable to juvenile delinquency proceedings because "charging errors affect the substantive rights of juveniles"); *In re B.S.A.*, No. 03-04-00319-CV, 2006 WL 954095, at *3 (Tex. App.—Austin April 13, 2006, no pet.) (mem. op.) (using *Almanza* for fundamental error analysis); *In re C.M.*, No. 11-02-00150-CV, 2003 WL 1414436, at *2 (Tex. App.—Eastland March 20, 2003, no pet.) (mem. op.) (applying egregious harm standard to jury charge error). *But see In re A.A.B.*, 110 S.W.3d at 555-59 (evaluating preservation of jury charge error under civil fundamental error analysis and disavowing *In re M.E.R.*, 995 S.W.2d 287, 291 (Tex. App.—Waco 1999, no pet.) (using *Almanza* fundamental error analysis to determine preservation of jury charge error)). Still, other courts have applied an *Almanza* harm analysis to juvenile delinquency proceedings in the absence of an issue as to preservation of error. *See In re A.E.B.*, 255 S.W.3d 338, 350 (Tex. App.—Dallas 2008, pet. dism'd) (applying *Almanza* to jury charge error subject to timely objection); *In re C.S.*, 79 S.W.3d 619, 621-22 (Tex. App.—Texarkana 2002, no pet.) (same); *In re E.F.*, 986 S.W.2d 806, 810 (Tex. App.—Austin 1999, pet. denied) (same); *cf. In re M.P.*, 126 S.W.3d 228, 231-32 (Tex. App.—San Antonio 2003, no pet.) (noting disagreement between the courts of appeals as to the proper harm analysis for jury charge error in juvenile delinquency proceedings but holding that the court did not have to choose between a criminal and a civil harm analysis because the result in the case would be the same under both).

Given the Texas Supreme Court's concern with the problems in applying different preservation rules in juvenile delinquency proceedings than in adult criminal proceedings and the position taken by most of the courts that have dealt with this issue, we will apply Article 36.19 to A.C.'s issues regarding jury charge error. We will reverse if error in the jury charge has caused egregious harm. *Almanza*, 686 S.W.2d at 171. To determine whether an appellant suffered egregious harm, we consider (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*

A. *"With a Closed Fist" – Lack of Notice?*

In his second issue, A.C. argues that the absence from the jury charge of the allegation "with a closed fist" deprived him of notice by expanding the grounds upon which he could be adjudicated delinquent.

A juvenile is entitled to the essentials of due process and fair treatment. *L.G.R. v. State*, 724 S.W.2d 775, 776 (Tex. 1987). The Texas Family Code requires that a petition state "with reasonable particularity the time, place, and manner of the acts alleged and the penal law or standard of conduct allegedly violated by the acts." TEX. FAM. CODE ANN. § 53.04(d)(1) (Vernon 2008).

In *L.G.R.*, the petition alleged that the juvenile, "did then and there, with intent to destroy or damage a building . . . intentionally start a fire in said building." *L.G.R.*, 724 S.W.2d at 775. However, the jury charge authorized an adjudication of delinquency if the jury found that the juvenile, with intent to destroy a boxcar, intentionally set fire to the boxcar and that the fire in the building would not have occurred but for the juvenile's conduct. *Id.* The court held that the petition did not state with reasonable particularity the place and manner of the acts submitted in the jury charge because it did not allege that the juvenile would be tried for setting fire to a boxcar. *Id.* at 776. The variance between the petition and the jury charge deprived the juvenile of a fair trial. *Id.*

In this case, the petition alleged that A.C. intentionally, knowingly, or recklessly caused serious bodily injury to T.N. by striking him in the face "with a closed fist." The jury charge authorized an adjudication of delinquency if the jury found that A.C. intentionally, knowingly, or recklessly caused serious bodily injury to T.N. by striking him in the face.

9

The absence from the jury charge of the allegation "with a closed fist" did not alter the offense for which A.C could be adjudicated delinquent. It did not permit an adjudication of delinquency for an act not alleged in the indictment. The jury charge's omission of the allegation that A.C. caused the injury with a closed fist in no way surprised A.C. or impaired his ability to prepare a defense. His defense did not hinge on the means by which the alleged assault was committed. Instead, A.C. argued that no assault took place and that T.N. suffered his injuries as a result of a bicycle accident. Moreover, T.N. testified that A.C. hit him with his hands. There is no indication that A.C. lacked notice of the acts based upon which he could be adjudicated delinquent or that he suffered egregious harm as a result of the absence of the allegation from the jury charge. A.C.'s second issue is overruled.

B. *"With a Closed Fist" – A Fact Necessary for Delinquent Conduct?*

In his third issue, A.C. argues that the absence from the jury charge of the allegation "with a closed fist" deprived him of his right to have a jury find all facts necessary to constitute delinquent conduct beyond a reasonable doubt.

The function of a jury charge is to instruct the jury on the law applicable to the case. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The charge must contain an accurate statement of the law and must set out all essential elements of the offense. *Id*. A charge is defective if it omits an essential element of the offense or authorizes conviction on a set of facts that do not constitute an offense. *Zuckerman v. State*, 591 S.W.2d 495, 496 (Tex. Crim. App. 1979).

Delinquent conduct is conduct other than a traffic offense that violates a penal law of Texas or of the United States and that is punishable by imprisonment or confinement in jail. TEX. FAM. CODE ANN. § 51.03(a)(1) (Vernon Supp. 2010). The adjudication of a juvenile as a delinquent is based on the criminal burden of proof: beyond a reasonable doubt. *Id*. § 54.03(f). A person commits the offense of aggravated assault if he intentionally, knowingly, or recklessly causes serious bodily injury to another. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1) (Vernon 2011).

A.C. cites *Schmidt v. State*, 278 S.W.3d 353 (Tex. Crim. App. 2009), and *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007), for the proposition that the State is required to prove at trial the nonstatutory manner and means alleged in the charging instrument. These cases set out the lesser-included-offense analysis required by TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon

2006). *Schmidt*, 278 S.W.3d at 356 n.5; *Hall*, 225 S.W.3d at 526-27. Article 37.09 provides that an offense is a lesser included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Article 37.09(1).

The first step of the lesser-included-offense analysis is to examine the elements of the offense and the facts alleged in the charging instrument to determine as a matter of law whether the elements of the lesser included offense are established "by proof of the same or less than all the facts required to establish the commission of the offense charged." *Hall*, 225 S.W.3d at 531, 535-36 (quoting Article 37.09(1)). Among the allegations to be taken into account in the first step of the lesser-included-offense analysis is the nonstatutory manner and means of committing the charged offense. *Schmidt*, 278 S.W.3d at 360. In this regard, the court in *Schmidt* noted that the State may be required to allege in the charging instrument the nonstatutory manner and means of committing an offense in order to provide the defendant with adequate notice, even though the defendant could be convicted of the offense in the absence of such an allegation. *Id.* (citing *Doyle v. State*, 661 S.W.2d 726, 729-31 (Tex. Crim. App. 1983) (defendant's timely motion to quash a "nonfundamentally defective" indictment entitled the defendant to notice of how the charged offense was alleged to have been committed)). Both *Schmidt* and *Hall* emphasize that the first step of a lesser-included-offense analysis must be capable of being performed before trial in order to give the defendant adequate notice of the offenses with which he may be convicted. *Id.*; *Hall*, 225 S.W.3d at 535-36.

The second step of the lesser-included-offense analysis is to determine whether there is some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser included offense. *Hall*, 225 S.W.3d at 536.

A.C. contends that, because the State may be required to allege the nonstatutory manner and means of committing the offense in the charging instrument, the State must prove this same manner and means at trial. While A.C. does not challenge the sufficiency of the evidence, that area of review is instructive. Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997); *In re L.F.L.T.B.*, 137 S.W.3d 856, 858 (Tex. App.—Eastland 2004, no pet.) (applying *Malik* to juvenile delinquency proceedings). Such a charge should be one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

11

describes the particular offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240. For example, we have held that the allegation contained in an indictment that the defendant committed the offense of injury to a child "with his hand" was not an element of that particular offense and would not have to be included in a hypothetically correct jury charge. *Phelps v. State*, 999 S.W.2d 512, 516, 518 (Tex. App.—Eastland 1999, pet. ref'd) (quoting Section 22.04(a) of the Penal Code ("A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury.")). Thus, the State's failure to offer evidence at trial that appellant caused injury "with his hand" did not render the evidence insufficient to support his conviction. *Id*. at 515, 518. In reaching this decision, we explained that "[t]he 'manner and means' *allegata* in an indictment arise out of a due process concern, that is an accused is entitled to fair notice of the charges pending against him. However, 'manner and means' *allegata* are not elements of the offense." *Id*. at 517 (footnote omitted).

The court in *Schmidt* acknowledged this distinction between what the State may be required to allege in the charging instrument and what the State must prove at trial when it refused to apply surplusage jurisprudence to determine which allegations needed to be examined in the first step of a lesser-included-offense analysis by noting that surplusage "speaks more to sufficiency-of-the-evidence issues." *Schmidt*, 278 S.W.3d at 361 & n.18. The decisions in *Schmidt* and *Hall* were motivated by a concern with providing notice to the defendant before trial of the offenses with which he may be convicted. *Id*. at 360; *Hall*, 225 S.W.3d at 535-36. These cases did not deal with the issue of which facts alleged in the charging instrument the jury must find beyond a reasonable doubt in order to convict.

In this case, the jury charge permitted an adjudication of delinquency only if the jury found beyond a reasonable doubt that A.C. intentionally, knowingly, or recklessly caused serious bodily injury to T.N. by striking him in the face. This instruction largely tracks the language of the Penal Code. *See* Sections 22.01(a)(1), 22.02(a)(1). If A.C. had challenged the sufficiency of the evidence supporting his adjudication, the nonstatutory manner and means, "with a closed fist," that was alleged in the petition would not have been included in a hypothetically correct jury charge. *See Phelps*, 999 S.W.2d at 516-18. Therefore, this allegation was not an essential

element of the offense of aggravated assault causing serious bodily injury, and it was not error for the trial court to omit this allegation from the jury charge. *See Hardie v. State*, 588 S.W.2d 936, 938-39 (Tex. Crim. App. 1979) (no error in omitting from the jury charge an unnecessary allegation when the charge instructed the jury as to all essential elements of the offense). A.C.'s third issue is overruled.

### *C. Instruction on Serious Bodily Injury.*

A.C. next argues that the trial court erred by failing to include a definition of "serious bodily injury" in the jury charge.

If a phrase, term, or word that the jury must use to properly resolve an issue is statutorily defined, the trial court must submit the statutory definition to the jury. *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986). The petition for adjudication alleged that A.C. committed aggravated assault causing serious bodily injury. The Texas Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon 2011). Consequently, the trial court erred when it did not include the statutory definition of serious bodily injury in the charge.

We examine the record to see if this error caused A.C. egregious harm. *Almanza*, 686 S.W.2d at 171. In reviewing the record, counsel's statements during voir dire may be considered. *Fulcher v. State*, 274 S.W.3d 713, 717 (Tex. App.—San Antonio 2008, pet. ref'd).

While giving an overview of the case during voir dire, the State explained:

> Then you've got that where it's a felony it's serious bodily injury. We're not going to get hung up on the definition of serious bodily injury now. We'll talk about it later. But those are the type of injuries that cause disfigurement, or permanent damage, breaking of bones, cuts that scar. Those are the types of things that we'll talk about for serious bodily injury, or of course, anything that's life threatening would be a serious bodily injury.

This effectively provided the jury with the statutory definition of serious bodily injury. *See* Section 1.07(a)(46). In addition, the element of serious bodily injury was not in dispute. During closing argument, defense counsel admitted that T.N.'s injuries were serious. As noted above, A.C.'s defense was that the assault never happened and that T.N.'s injuries were caused by a bicycle accident. As such, his defense was not vitally affected by the failure to provide a

definition of "serious bodily injury" in the jury charge. *See Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Consequently, A.C. did not suffer egregious harm from the failure to include a definition of serious bodily injury in the jury charge. A.C.'s fourth issue is overruled.

## V. *Conclusion*

The judgment of the trial court is affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


September 8, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.